**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| DASSAULT SYSTÈMES SIMULIA CORP., and DASSAULT SYSTÈMES AMERICAS CORP. | Index No.: |
| *Plaintiffs,* | |
| - v.- | **COMPLAINT AND JURY DEMAND** |
| NABORS INDUSTRIES INC.; MINDMESH INC.; and VARADARAJU GANDIKOTA | |
| *Defendants.* | |

Plaintiffs Dassault Systèmes Simulia Corp. ("DS Simulia") and Dassault Systèmes Americas Corp. ("DS Americas") by its undersigned counsel as and for its Complaint against Defendants Nabors Industries Inc. ("Nabors"), MindMesh Inc. ("Mindmesh"), and Varadaraju Gandikota ("Gandikota") (collectively, "Defendants") hereby alleges as follows:

## NATURE OF THE ACTION

This is a copyright infringement, circumvention of technological measures, and Massachusetts Common Law breach of contract action arising out of Nabors', MindMesh's, and Gandikota's unauthorized and willful use and copying of DS Simulia's ABAQUS software package.

## THE PARTIES

1.      Plaintiff DS Simulia is a Delaware corporation, having a principal place of business at 1301 Atwood Avenue, Suit 101W, Johnston, RI 02919.

2.      Plaintiff DS Americas is a Delaware corporation, having a principal place of business at 175 Wyman Street, Waltham, MA 02451.

3.      On information and belief, Defendant Nabors is a Delaware corporation having a principal place of business at 515 W Greens Rd, Houston, TX 77067.

4.      On information and belief, Defendant MindMesh is a Texas corporation having a principal place of business at 12345 Jones Road Ste. 222, Houston, TX 77070-4959.

5.      On information and belief, Defendant Gandikota is an adult individual residing at 18606 N Colony Shore Dr, Cypress, TX 77433.

## JURISDICTION AND VENUE

6.      This action arises under 17 U.S.C. § 101 et seq. for Defendants' infringement of copyrights owned by DS Simulia and for Defendants' circumvention of technical measures used to control access to DS Simulia's ABAQUS software packages and under state law for breach of contract between MindMesh and DS Americas.

2

7.    This Court has subject matter jurisdiction over these copyright infringement and circumvention claims pursuant to 28 U.S.C. §§ 1331, 1332(a), and 1338(a).  This Court has subject matter jurisdiction over the state law claim pursuant to 28 U.S.C. §1367(a).

8.    This Court has personal jurisdiction over Nabors because, among other things, Nabors resides in and conducts business in Texas and in this district.

9.    This Court has personal jurisdiction over MindMesh because, among other things, Mindmesh resides in and conducts business in Texas and in this district.

10.    This Court has personal jurisdiction over Gandikota because, among other things, he resides in and conducts business in Texas and in this district.

11.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2), 1391(c)(2), and 1400(a).

## **BACKGROUND**

### **DS Simulia and the Copyrighted Works**

12.    DS Simulia is the creator, author, and owner of the software code for the ABAQUS software package, which is a computer aided engineering ("CAE") software package enabling its users to do simulations utilizing finite element analysis ("FEA").

13.     DS Simulia owns many copyright registrations for the ABAQUS

software package, including the registrations in Table 1 below, also attached as

Exhibit 1, hereto.

| Registration Number | Registration Name |
|---|---|
| TX 0006994605 | ABAQUS Version 6.7 |
| TX 0008053365 | ABAQUS Version 6.11 |
| TX 0008053376 | ABAQUS Version 6.12 |
| TX 0008854670 | ABAQUS 2019 |

Table 1

## ABAQUS' Licensing Scheme

14.     DS Simulia has created, authored, and is the owner of various

"releases" of ABAQUS, each building upon the prior release.

15.     ABAQUS has a token based licensing scheme, which limits the

licensee's authorization to use ABAQUS.

16.     Tokens are required to run a simulation. The number of required

tokens is determined by the type of computation being performed and the number

of individual processing units of their computers, known as cores, used in running

the computation.

17.     DS Simulia's licensees can purchase tokens, increasing the number of

cores authorized to be used in running their simulations.

18.     The usage of more cores provides benefits to licensees, including

increasing speed and enabling more simulations to be run simultaneously.

4

19.     DS Simulia does not authorize its customers to use ABAQUS on more cores than their number of tokens allow.

20.     ABAQUS includes a technological measure that prevents users from using ABAQUS without authorization, including by exceeding the number of cores allowed to be used.

## MindMesh's Lengthy History of ABAQUS Piracy

21.     In 2016, DS Simulia authorized MindMesh to use ABAQUS for evaluation purposes. The evaluation allowed the use of twenty-five tokens.

22.     Following this evaluation, MindMesh obtained a license to use ABAQUS 2016 with a yearly license charge, allowing for the use of five tokens.

23.     After MindMesh's purchase, DS Simulia detected MindMesh using ABAQUS modified to bypass ABAQUS' licensing mechanism.

24.     Following this detection, MindMesh migrated his license to use ABAQUS with a yearly license charge to a perpetual ABAQUS license. After the migration MindMesh was allowed to use nine tokens.

25.     In 2017, DS Simulia detected MindMesh using ABAQUS modified to bypass ABAQUS' licensing mechanism again.

26.     Following this detection, MindMesh obtained eight additional tokens for ABAQUS 2016.

27.    In 2024, DS Simulia detected MindMesh using ABAQUS 2019 modified to bypass ABAQUS' licensing mechanism.

## Detection of Infringement by Defendants

28.    The ABAQUS software incorporates detection and monitoring technology that detects and identifies use of unlicensed and unauthorized copies of the ABAQUS software and transmits identifying data to DS Simulia over the internet when such unauthorized uses occur.

29.    Through its monitoring technology, DS Simulia detected at least 62 uses of unlicensed and unauthorized copies of the ABAQUS software on at least two different computers having Media Access Control ("MAC") addresses as shown below in Table 2 (the "Computers").

| Computer | MAC Address |
|---|---|
| 1 | 509a4c404347 |
| 2 | e0d55eb4b5b8 |

Table 2

30.    Through its monitoring technology, DS Simulia detected that 18 of the above-referenced 62 uses of the unlicensed and unauthorized copies of the ABAQUS software occurred on Computer 1.

31.    Through its monitoring technology, DS Simulia detected the email domain "mindmeshtech.com" on Computer 1.

32.    The URL "mindmeshtech.com" directs to MindMesh's website.

33.    The MindMesh "Contact Us" page states that MindMesh can be reached at the email address "connect@mindmeshtech.com".

34.    MindMesh uses email addresses with the email domain "mindmeshtech.com" to send and receive emails.

35.    A January 25, 2023 Nabors press release states that "MindMesh co-founder and Chief Technology Officer Raju Gandikota joined Nabors as a Director in the Controls and Automation group." A true and accurate copy of the press release as found on https://www.nabors.com/nabors-acquires-digital-twin-developer-mindmesh/ on January 15, 2025 is attached as Exhibit 2, hereto (hereinafter "the Press Release").

36.    Gandikota is the CTO of MindMesh.

37.    Gandikota uses an email address with the email domain "mindmeshtech.com" to send and receive emails.

38.    Gandikota used an email address with the email domain "mindmeshtech.com" to send and receive emails on Computer 1.

39.    The Press Release indicates that Nabors acquired MindMesh shortly before January 25, 2023.

40.    The above-referenced 62 unauthorized and unlicensed uses of ABAQUS occurred between December 1, 2023 and March 10, 2024.

41.    Gandikota has been the Director in the Controls and Automation group since shortly before January 25, 2023.

42.    The license to use ABAQUS purchased by MindMesh was used on a computer with the MAC address 0025905c7e32.

43.    Computer 1 has MAC address 0025905c7e32.

44.    According to his LinkedIn profile, Gandikota was a PhD candidate at the Universitat de Barcelona. Gandikota's LinkedIn profile is attached as Exhibit 6, hereto.

45.    According to his LinkedIn profile, Gandikota worked on a paper on Discrete Element Methods for hydraulic fracturing modeling.

46.    Google Scholar shows that Gandikota is an author of papers including "A local constitutive model for the discrete element method. Application to geomaterials and concrete," "Application of an enhanced discrete element method to oil and gas drilling processes," and "A nonlinear finite element for simulation of dynamics of beam structures using multibody system approach." The Google Scholar results for papers authored by Gandikota is attached as Exhibit 7, hereto.

47.    Gandikota is an expert in finite element analysis.

48.    ABAQUS is used to perform finite element analyses.

49.    Gandikota has the expertise necessary to use ABAQUS.

50.    According to MindMesh's LinkedIn profile, it had two employees in February 2023.

51.    Upon information and belief, MindMesh has only ever had two employees.

52.    Upon information and belief, MindMesh's two employees are Gandikota and Anita Varadaraju.

53.    According to her LinkedIn profile, Anita Varadaraju has an MBA and a certificate in Museum Studies. Anita Varadaraju's LinkedIn profile is attached as Exhibit 8, hereto.

54.    Upon information and belief, Anita Varadaraju does not have the expertise necessary to use ABAQUS.

55.    Upon information and belief, Gandikota is the only person who works for MindMesh with the expertise necessary to use ABAQUS.

56.    Gandikota used an authorized copy of ABAQUS on Computer 1.

57.    Gandikota later used an unauthorized copy of ABAQUS on Computer 1.

58.    Through its monitoring technology, DS Simulia detected that all 18 of the above-referenced uses of the unlicensed and unauthorized copies of the ABAQUS software on Computer 1 occurred while Computer 1 was connected to the internet through IP address 99.113.74.203.

59.     According to whatsmyipaddress.com, the IP address 99.113.74.203 is used in Cypress, Texas. *See* https://whatismyipaddress.com/ip/99.113.74.203.

60.     Gandikota lives in Cypress, Texas.

61.     Upon information and belief, Gandikota used an internet network with IP address 99.113.74.203 at the time of the unlicensed and unauthorized use of ABAQUS software on Computer 1.

62.     Through its monitoring technology, DS Simulia detected that up to 8 CPUs or cores were used for simulations during the unlicensed and unauthorized use of ABAQUS software on Computer 1.

63.     Through its monitoring technology, DS Simulia detected that 44 of the above-referenced 62 unlicensed and unauthorized uses of ABAQUS software occurred on Computer 2.

64.     Through its monitoring technology, DS Simulia detected that all 44 of the above-referenced 44 unlicensed and unauthorized uses of ABAQUS software on Computer 2 occurred while Computer 2 was connected to the internet through IP address 99.113.74.203.

65.     This is the same IP address detected on every detected unlicensed and unauthorized use of ABAQUS on Computer 1.

66.     According to whatsmyipaddress.com, the IP address 99.113.74.203 is used in Cypress, Texas. *See* https://whatismyipaddress.com/ip/99.113.74.203.

67.    Gandikota lives in Cypress, Texas.

68.    Upon information and belief, Gandikota used an internet network with IP address 99.113.74.203 at the time of the unlicensed and unauthorized use of ABAQUS software on Computer 2.

69.    The license to use ABAQUS purchased by MindMesh was used on a computer with the MAC address 0025905c7e32.

70.    Computer 2 has MAC address 0025905c7e32.

71.    Gandikota used an authorized copy of ABAQUS on Computer 2.

72.    Gandikota later used an unauthorized copy of ABAQUS on Computer 2.

73.    The vendor of the device with MAC address 0025905c7e32 is Super Micro Computer, Inc.

74.    Super Micro Computer, Inc. states that it "designs and builds an environmentally-friendly and energy-saving portfolio of servers." *See* https://www.supermicro.com/en/about.

75.    Through its monitoring technology, DS Simulia detected that Computer 2 used up to 48 cores to run a simulation.

76.    Through its monitoring technology, DS Simulia detected unauthorized and unlicensed uses of ABAQUS software on Computer 2 at about the same time

as it detected unauthorized and unlicensed uses of ABAQUS software on Computer 1.

77.    Upon information and belief, Computer 2 has been used as a server to provide processing power to Computer 1.

78.    Through its monitoring technology, DS Simulia detected that Computer 1 and Computer 2 used up to 56 cores, 8 on Computer 1 and 48 on Computer 2, to run a simulation on unauthorized and unlicensed copies of ABAQUS at about the same time.

79.    DS Simulia requires 27 tokens to run a simulation using 56 cores.

80.    MindMesh's license to use ABAQUS is a license to use ABAQUS 2017 with 17 tokens.

81.    Upon information and belief, Computer 1 and Computer 2 combined contain 56 cores.

82.    Gandikota bypassed DS Simulia's licensing mechanism and used unauthorized and unlicensed copies of ABAQUS so he could use all 56 cores contained in Computers 1 and 2.

83.    Through its monitoring technology, DS Simulia detected that all 62 unauthorized and unlicensed uses of ABAQUS on Computer 1 and Computer 2 were on ABAQUS 2019.

84.    Neither Gandikota nor Mindmesh had a license to use ABAQUS 2019.

85.    Gandikota bypassed DS Simulia's licensing mechanism to install ABAQUS 2019 when MindMesh did not have a license to use ABAQUS 2019.

86.    Gandikota used unauthorized and unlicensed ABAQUS software on Computer 2 to do work for MindMesh and/or Nabors.

**Infringement, Circumvention, and Breach by Defendants**

87.    The Computers are owned by at least one of the Defendants.

88.    The Nabors Press Release states that the MindMesh team has developed "downhole simulation and modeling technologies."

89.    The Nabors Press Release further states that "Plans are in the works to integrate several digital modeling and visualization technologies."

90.    ABAQUS is used for simulation, modeling, and visualization.

91.    Nabors and MindMesh financially benefit from the simulation, modeling, and visualizations ABAQUS provides.

92.    The Computers have been used by at least one of Gandikota, employees of Nabors and/or MindMesh and/or persons under the control of Nabors and/or MindMesh.

93.    ABAQUS licenses are governed by a license agreement.

94.    Gandikota accepted a license agreement on behalf of MindMesh each time he purchased an ABAQUS license or ABAQUS tokens. The End-User Order Form Gandikota signed when he purchased the 8 ABAQUS tokens on March 21, 2017 is attached as Exhibit 3, hereto.

95.    The End User Order Form states that MindMesh is the Customer.

96.    The End User Order Form states "[b]y answering 'Yes' below, Customer hereby requests and agrees that all DS Offerings (i.e. Licensed Programs and/or Online Services and/or Packaged Offerings), including those described in this End-User Order Form, for which the right to use was originally granted under a non-negotiated DS Group agreement ("Legacy License Agreements") will be exclusively subject to the terms and conditions of the CLOSA (indirect)- USA-V11.2, as of the date this End-User Order Form is accepted by DS." Exhibit 3 p. 1.

97.    Gandikota wrote "yes" below, thereby requesting and agreeing that all DS Offerings would be exclusively subject to the terms and conditions of the CLOSA (indirect)- USA- V11.2. Exhibit 3 p.1.

98.    The End User Order Form states "[b]y duly signing and submitting to Distributor this End-User Order Form, Customer acknowledges and agrees that… (ii) the terms and conditions of the CLOSA (Indirect) –USA—V11.2 ('Agreement') with DS (Dassault Systèmes Americas Corp), including without limitation any terms that are published on a website that is referenced in the

14

Agreement, are hereby irrevocably and unconditionally accepted by Customer."
Exhibit 3 p. 1.

99. The distributor is JBL Technologies Gulf Coast LP. Exhibit 3 p. 1.

100. Gandikota duly signed and submitted the End User Order Form and
submitted it to JBL Technologies Gulf Coast LP. Exhibit 3 p. 2.

101. Gandikota irrevocably and unconditionally accepted CLOSA
(Indirect) – USA—V11.2, including without any limitation any terms that are
published on a website that is referenced in it.

102. CLOSA (Indirect) – USA – V11.2 (the "CLOSA") is attached as
Exhibit 4, hereto.

103. The CLOSA states "DS also reserves the right to use a hardware lock
device, license administration software, and/or a license authorization key to
control access to, and use of, any DS Offering. Customer may not take any steps to
tamper with, circumvent or disable any such measures. Use of any Licensed
Program without any hardware lock device, license administration software and/or
license authorization key provided by DS is prohibited." Exhibit 4, p. 5.

104. Gandikota took steps to tamper with, circumvent and disable the
hardware lock device, license administration software, and/or the license
authorization key that controlled access to and use of ABAQUS.

105.   The CLOSA states "Customer agrees to operate each DS Offering in accordance with the terms and provisions of this Agreement and the Documentation for such DS Offering and to ensure that its authorized users comply with such terms and provisions." Exhibit 4 p. 1.

106.   The CLOSA states "Agreement means these General Terms, the applicable OST(s), the Country Specific Terms, the Transaction Document and the terms contained in the web links referenced herein and hereby incorporated by reference." Exhibit 4 p. 1.

107.   The CLOSA states "OST means the Offering Specific Terms which are specific terms relating to a given Licensed Program or Online Services and published at www.3ds.com/terms/ost." Exhibit 4 p. 1.

108.   The ABAQUS 2016 OST (the "OST"), found at www.3ds.com/terms/ost, is attached as Exhibit 5, hereto.

109.   The End User Order Form states that the Licensing Scheme is Token Based. Exhibit 3.

110.   The OST states under "**LICENSING SCHEMES**", "**Token Based.** Certain DS Offerings contain a token based network license management system that regulates authorized use of the DS Offering. Such system controls the type and number of computation jobs, interactive sessions and/or interface products that may be run simultaneously." Exhibit 5 p. 4.

111.    The OST states "Number of tokens: For analysis jobs, the number of required tokens is determined by the type of analysis being performed and the number of processor cores used in running the analysis job." Exhibit 5 p. 1.

112.    Gandikota ran simulations with a greater number of processor cores that his number of tokens allowed.

113.    Gandikota did not operate ABAQUS in accordance with the terms and provisions of the Agreement.

114.    During the installation process of ABAQUS, a license agreement is displayed to the user installing the software.

115.    A license agreement is required to be accepted during the installation of the ABAQUS software.

116.    MindMesh accepted a license agreement when it installed the unauthorized copy of ABAQUS 2019 on the computers.

117.    Through its monitoring technology, DS Simulia detected that ABAQUS had been tampered with to bypass the licensing mechanism on Computer 1 and Computer 2.

118.    At least one of Gandikota, employees of Nabors and/or MindMesh and/or persons under the control of Nabors and/or MindMesh tampered with ABAQUS following the installation of ABAQUS to bypass its licensing mechanism.

17

119.   At least one of Gandikota, employees of Nabors and/or MindMesh and/or persons under the control of Nabors and/or MindMesh launched (executed) and/or used one or more unlicensed and unauthorized copies of ABAQUS on the Computers.

120.   At least one of Gandikota, employees of Nabors and/or MindMesh and/or persons under the control of Nabors and/or MindMesh have been using DS Simulia's ABAQUS software packages without authorization or permission from DS Simulia.

## Notice of Infringement to MindMesh and Nabors

121.   DS Americas contacted Gandikota regarding the unauthorized and unlicensed use of ABAQUS on the Computers on March 13, 2024.

122.   The last detected use of unauthorized and unlicensed copies of ABAQUS software on the Computers occurred on March 10, 2024.

123.   Between March 13, 2024 and June 5, 2024, DS Simulia attempted to resolve the unauthorized and unlicensed use of ABAQUS on the Computers. Gandikota ceased responding.

124.   On July 2, 2024, counsel for DS Simulia contacted Nabors regarding the unauthorized and unlicensed use of ABAQUS.

125.    Between July 2, 2024 and October 10, 2024, counsel for DS Simulia and Nabors attempted to resolve the unauthorized and unlicensed use of ABAQUS on the Computers. No resolution was reached.

### COUNT I
### FEDERAL COPYRIGHT INFRINGEMENT
### (17 U.S.C. § 501)
### (Against All Defendants)

126.    Plaintiffs repeat and incorporate herein each of the preceding paragraphs.

127.    ABAQUS, including ABAQUS 2019, is an original work of DS Simulia and is protectable by the copyright laws of the United States.

128.    DS Simulia owns all rights and title to the copyrights for ABAQUS.

129.    At least one of least one of Gandikota, employees of Nabors and/or MindMesh or persons under the control of Nabors and/or MindMesh installed, executed, and used the ABAQUS software on one or more computers without authorization or permission from DS Simulia.

130.    Each time at least one of least one of Gandikota, employees of Nabors and/or MindMesh or persons under the control of Nabors and/or MindMesh caused a computer to copy the ABAQUS software code stored on the computer storage unit (e.g., hard disk drive) to the computer's volatile memory, e.g., random access memory (RAM) without authorization or permission from DS Simulia.

131.   Gandikota, employees of Nabors and/or MindMesh or persons under the control of Nabors and/or MindMesh executed ABAQUS at least on the Computers.

132.   By making unauthorized copies of ABAQUS as described above, At least one of Gandikota, employees of Nabors and/or MindMesh or persons under the control of Nabors and/or MindMesh infringed and violated (directly or indirectly) DS Simulia's copyrights in ABAQUS and the ABAQUS Copyright Registrations, including at least DS Simulia's exclusive right under 17 U.S.C. § 106(1) "to reproduce the copyrighted work in copies."

133.   Upon information and belief, Nabors and MindMesh received a direct financial benefit from the above-described infringement of DS Simulia's copyrights.

134.   Upon information and belief, Nabors and MindMesh controlled the above-described infringement of DS Simulia's copyrights.

135.   At least one of Gandikota's, MindMesh's, and Nabor's infringement and violation of DS Simulia's copyrights has been knowing and willful.

136.   DS Simulia has been damaged by the aforementioned infringement.

## COUNT II

## CIRCUMVENTION OF TECHNOLOGICAL MEASURES
### (17 U.S.C. § 1201)
### (Against all Defendants)

137.   Plaintiffs repeat and incorporate herein each of the preceding paragraphs.

138.   ABAQUS includes technological measures that effectively control access to and use of the ABAQUS software, including a requirement during installation to input an authorized License Key provided by DS Simula to properly-licensed users of ABAQUS to "unlock" ABAQUS and thereby allow the installation, subsequent authorized use of, and access to ABAQUS.

139.   Upon information and belief, at least one of Gandikota, employees of Nabors and/or MindMesh or persons under the control of Nabors and/or MindMesh circumvented the technological measures incorporated in ABAQUS to exceed the use allowed by the license by avoiding, bypassing, deactivating, or otherwise impairing such technological measures, including at least during the installation of ABAQUS.

140.   Upon information and belief, at least one of Gandikota, employees of Nabors and/or MindMesh or persons under the control of Nabors and/or MindMesh used a crack program to avoid, bypass, deactivate, or otherwise impair such technological measures.

141.    By avoiding, bypassing, deactivating, or otherwise impairing the technological measures to control access to ABAQUS, including by avoiding, bypassing, deactivating, or otherwise impairing the controls in place to limit the use of ABAQUS to that which is authorized, at least one of Gandikota, employees of Nabors and/or MindMesh or persons under the control of Nabors and/or MindMesh, have violated 17 U.S.C. § 1201.

142.    Each time at least one of Gandikota, employees of Nabors and/or MindMesh or persons under the control of Nabors and/or MindMesh used ABAQUS modified by the crack program, at least one of Gandikota, employees of Nabors and/or MindMesh or persons under the control of Nabors and/or MindMesh violated 17 U.S.C. § 1201 by avoiding, bypassing, deactivating, or otherwise impairing ABAQUS' technological measures.

143.    Upon information and belief, Nabors and MindMesh received a direct financial benefit from the above-described circumvention of DS Simulia's technological measures.

144.    At least one of Gandikota's, MindMesh's, and Nabors' circumvention has been willful.

145.    DS Simulia has been damaged by the aforementioned circumvention.

## COUNT III

## BREACH OF CONTRACT
## (Massachusetts Common Law)
## (Against MindMesh)

146.    Plaintiffs repeat and incorporate herein each of the preceding paragraphs.

147.    MindMesh irrevocably and unconditionally accepted CLOSA and the OST, an agreement between MindMesh and DS Americas.

148.    The CLOSA states "DS also reserves the right to use a hardware lock device, license administration software, and/or a license authorization key to control access to, and use of, any DS Offering. Customer may not take any steps to tamper with, circumvent or disable any such measures. Use of any Licensed Program without any hardware lock device, license administration software and/or license authorization key provided by DS is prohibited." Exhibit 4, p. 5.

149.    MindMesh breached the CLOSA by taking steps to tamper with, circumvent, and/or disable ABAQUS' hardware lock device, license administration software, and/or license authorization key.

150.    The CLOSA states "Customer agrees to operate each DS Offering in accordance with the terms and provisions of this Agreement and the Documentation for such DS Offering and to ensure that its authorized users comply with such terms and provisions." Exhibit 4 p. 1.

151.    MindMesh breached the CLOSA by not operating ABAQUS in accordance with the terms and provisions of the Agreement, at least by running simulations requiring my tokens than it had.

152.    The License Agreement states that it is to be governed by the law of the Commonwealth of Massachusetts. Exhibit 4 p. 7.

153.    Plaintiffs have been damaged by the aforementioned breach.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

A.    For a judgment determining that Nabors, MindMesh, and Gandikota have infringed DS Simulia's copyrights in violation of 17 U.S.C. § 501;

B.    For a judgment determining that Nabors, MindMesh, and Gandikota have circumvented a technological measure that controls access to the ABAQUS software in violation of 17 U.S.C. § 1201;

C.    For a finding that such infringement and/or circumvention was willful;

D.    For a judgment determining that MindMesh has breached the CLOSA under Massachusetts Common Law;

E.    For a judgment preliminarily and permanently enjoining and restraining Nabors and MindMesh, including their officers, directors, employees, agents, and servants, and all those in active concert of participation with any of

them from directly or indirectly infringing DS Simulia's copyrights and circumventing ABAQUS' licensing mechanism;

  F. For a judgment awarding Plaintiffs (i) their actual damages profits in an amount to be determined in excess of $75,000, (ii) any profits of Nabors, MindMesh, and Gandikota, (iii) statutory damages of $150,000 per work infringed, and (iv) costs of this action including attorneys' fees as permitted pursuant to 17 U.S.C. §§ 504 and 505;

  G. For a judgment awarding Plaintiffs (i) their actual damages in an amount to be determined in excess of $75,000, (ii) any profits of Nabors, MindMesh, and Gandikota, (iii) statutory damages of $2,500 per act of circumvention, and (iv), costs of this action including attorneys' fees as permitted pursuant to 17 U.S.C. § 1203;

  H. For a judgment awarding Plaintiffs any other damages to which they are entitled under statute or common law; and

  I. For such other and further relief as the Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs hereby demands a trial by jury in this action.

Respectfully Submitted,

/s *Hank Fasthoff*
Hank Fasthoff
FASTHOFF LAW FIRM PLLC
Texas Bar No. 24003510
Federal Bar No. 22959
21 Waterway Ave., Suite 300
The Woodlands, Texas 77380
713.929.9314
hank@fasthofflawfirm.com

*Counsel for Plaintiffs*


Glenn E. Forbis
Jeremiah J. Foley
Harness, Dickey & Pierce PLC
5445 Corporate Drive, Suite 200
Troy, MI 48098
248-641-1600
gforbis@harnessip.com

(*Pro Hac Vice* Pending)
*Of Counsel*